Our third case today is number 21-2022. Ms. Jump? Yes your honor. Can you represent Mr. Mowery? Yes I do your honor. Pleased to have you here. You may proceed when you're when you're ready there. Take your time. Thank you your honor. May it please the court, my name is Christina Jump and I am here on behalf of Nathan Mowery, the appellant here today. Traditional equitable principles require the balancing of public and private interests. That's what the Supreme Court said in Webster v. Doe. And more recently, the Supreme Court held that a plaintiff experiencing a deprivation of a right must, of necessity, have a means to validate that right. In Uzegunum v. Prochesky, and my apologies if I did not pronounce that particular case name correctly. Restricting judicial review to the degree that absolutely no judicial consideration would be available is not what the Supreme Court favors. And this court, most recently in Wicked Media Foundation v. NSA, recognized the need to strike fair and just balance between national security and the protection of personal liberties. That's why we're here today your honors. Nathan Mowery, our client and the appellant here today, has security clearance that he had prior to the events relevant to this particular matter. He was a contractor with NGA and was a direct employee and then CIA assignee. This all went well until, during the mandatory psychological evaluation, which was part of the medical clearance, he was asked why he had stopped drinking two years previously, as a follow-up to one of his earlier answers. And he said it's because he converted to Islam. All the questions from that point forward were focused on his religious beliefs, his religion, and his practice of his beliefs. Appellees described this as a medical clearance process, which included the psychological exam. Mr. Mowery's security clearance was not denied or revoked. In fact, appellees specifically went out of their way to inform him by email that this is not a denial of a security clearance. And yet he was given no recourse, whether by administrative or by law. And unlike all of the cases cited in this briefing by both parties, no reason was identified for appellee's actions regarding Mr. Mowery. Also, appellees have never identified the evaluator or the specific qualifications of that individual and whether that person administering the psychological exam ever made a particular recommendation and on what basis. All prior cases cited to this court do identify at least a reason, even in the national security context. In Egan itself, negative information had not been previously disclosed. In Haggab, the plaintiff's new wife had activity that led to concerns by the agencies. In Campbell v. McCarthy by this court, there were allegations that the plaintiff had acted as a stalker and also that he brought recording devices to the facility against regulations. In Reinbold, the plaintiff was determined to be paranoid and delusional. In Becerra, have you brought a due process claim along these lines that he was entitled to be told the reason? And is that before us or do we still have the preliminary sort of question of whether we can even get there because of Egan? Your Honor, we do not have a due process claim, a separate constitutional due process claim in this lawsuit and much like the plaintiff in Egan did not. There was no stand-alone due process claim in that case either. And I do believe the first thing we need to do is determine whether we get there, you know, whether we go any further. As the court is aware in this case, the district court granted the motion to dismiss based on subject matter jurisdiction on the 12b-1. There's also 12b-6 filed but that was not considered by the district court and there was no ruling made on that basis. The appellees point to cases like Foote and Sanchez. The dismissal here was without prejudice, was it not? The dismissal here was without prejudice and with the notation by the district court judge that the discussion which occurred at oral argument before the district court, the discussion regarding potential amendments to include a due process claim would in the district court judge's mind be futile. We obviously disagree with that and would request among other things that should this court affirm on the existing basis that we be entitled to remand to bring a due process, a constitutional due process claim by way of amendment as that would still be a timely claim. You're asking us for permission to amend the complaint? We did not at the district court level, Your Honor, because the discussion had occurred during the oral argument before the district court and the decision of the district court, again, listed even though there had not been a proposed amended complaint submitted for the judge to consider, the decision of the district court specifically listed in a footnote that that would be considered futile and the district court would not be, would not entertain that. Based on that basis, we went straight to appeal. We're not in that business either. I'm sorry, Your Honor? We're not in that business, I don't think either, to let you amend a complaint if you got up here. Your Honor, I would argue that bringing a constitutional due process claim is something that Mr. Mowrey could do in an independent action right now that would still be timely and in the interest of judicial economy, continuing with this case as opposed to starting fresh a brand new one would benefit all parties involved, but he could bring a fresh claim if we came to that and if that were necessary. Again, though, we don't believe that the precedent leads to that and that the application of Egan to the facts of this case lead to that outcome. Let me ask you, how is it that the decision to halt security processing, not essentially a decision that equates to the denial of security claims? Your Honor, I would agree that it has the impact on Mr. Mowrey of equating to a denial as if he couldn't continue the processing, then he couldn't take the position that he had been offered. However, what has not happened here is the exercise of any predictive judgment. Unlike all of the other cases that are briefed by both parties in this matter, what happened in each of those, the agencies identified a particular reason, even in the night before revoking or... Isn't the predictive judgment going to the national security concerns? Your Honor, we don't know here on this one because what was addressed was simply that they were not going to continue the processing, no reason given. And Mr. Mowrey specifically informed that this was not a denial of a national security clearance, that he was welcome to and should list on any future application, and he had not been denied security clearance. Wasn't that to his benefit, that you would not want to go forward and have it put on a future application, that you've been denied a security benefit? He certainly would not want to put that on a future application, Your Honor, but where it matters here is that that provides, near as we can tell, indication that this was not based on him being considered any sort of a security risk. He continues to hold security clearance today. I thought this was not considered a security clearance. It's considered a separate additional security requirement or whatever the language is. So, and you just pointed out he has a security clearance. So the reason that he was told this is you've not been denied a security clearance, it's because he hasn't. He's been denied, he didn't satisfy this additional security requirement, but it's not a clearance. And that's the whole discussion, is are we going to, does EGAN apply to this category? But it's just because it's just factually not a clearance. That is correct, Your Honor, in that this was the additional medical requirement on top of the security clearance that he already had. But the cases which extend EGAN into additional context such as that, again, they all have where the agencies have identified a reason for denying, or revoking the status that is at issue and that's not present here. Where does that come into the EGAN analysis? The fact that they were given a reason rather than just told, you know, we're assessing security and trying to determine whether someone can be trusted with, you know, we're making a future prediction about whether they can be trusted with reasons we can't tell you, you haven't satisfied it. Where in our analysis do we factor in what you're talking about? Which is that he wasn't given, he wasn't told the specific reason why he was found potentially untrustworthy or not of a current mental state to be able to fulfill this obligation, although he could apply again in one year. Your Honor, two things as, first of all, we don't know that he was found not to be of an appropriate mental state. Again, the particular factor that the stage where he was was not denied. He was not told that you don't meet this. He was simply told we will not continue processing. We will not go further with the processing. So, we actually don't know that he was considered. You're saying there was no decision. I'm sorry? There's no decision made. Correct. There was no decision made. They basically said that. I'm wondering now, we haven't even got jurisdiction here. You don't have a decision to denial and you don't have a dismissal with prejudice. What are we doing here? Your Honor. What do you want us to do? Issue an injunction or something? We have requested equitable relief. We have requested injunction in the pleadings. Your Honor, what I would say is that. You want us to complete the process? What we would like to do is complete the process. Either complete the process on that, Your Honor. Or revamp to the district court. Did you ask Judge Ellis for an injunction? Yes, Your Honor. Did he deny? He did not rule on that. He ruled that there was no. Well, you can't appeal that. I'm sorry. He didn't rule on it. How do you get jurisdiction for the appeal? You don't have a final order then. Doesn't sound to me like. We have one. He didn't deny your injunction request. And he didn't issue a final order. He dismissed it without prejudice. Your Honor, we have what we. We have a final order from the district court. That we believe to be in there. For the reasons that you've just articulated. We don't believe that it was appropriate. We believe what should be appropriate is to remand it back. And then we can proceed with the case. Because if there was no national security decision. Then there is no national security protective cloak. That applies to the actions of appellees here. They don't get predicted judgment. If they didn't make a judgment. He basically said that Egan case. Says this is not article 3 business. This is article 2 business. Security clerks. It's a matter for the executive branch. Correct, Your Honor. And since there was no decision made. We dispute that that would apply. That Egan would apply. And that would extend. He had no decision to review. You're saying he had no decision to review. Correct. There was no decision to review. There was no predictive judgment. Counsel, I'm confused. Because in the appendix, the CIA. In this declaration, they say. Based on the psychological examination. The psychologist made the predictive assessment. That there were concerns about Mr. Mallory's ability to meet the standards. Set forth in 704.2. As a result of the assessment. The CIA terminated Mr. Mallory's personnel security processing. In May of 2017. So they found there was a predictive judgment. So they terminated processing. Where's the lack of finality? Your Honor, what I would say is different here. Is first of all, that he was not told. We're denying the processing. Or we're denying the next status. He was told we're halting it. We're not going to move forward with stopping. Halting can mean stopping terminating. Not continuing. We're not. You want us to read it as like pausing. Maybe we'll pick it up again one day. But there's nothing in the record to suggest that. Your Honor, also what did not happen here. That has happened in every other case. It has examined. These similar situations with additional. Additional requirements that need to be evaluated. As this court did in Haggab case. In that case there already was security clearance. And what was evaluated was the revocation. Based on an additional evaluation. And what did not happen here. Is that here we don't know that the. Person doing whoever it may have been. Doing the psychological evaluation. We don't know that that individual. Did recommend not to move forward. We know that they after the fact. With the declaration that's provided. A person who was not involved in the process. Says I read the file. The way that I read the file. I believe that there were some concerns. And I think that was the basis of it. Every single other case. Again, Reinvold, Campbell, B McCarthy. Foote, Sanchez, Egan, Haggab and Becerra. All identify that. Either the agency revoked. Or refused to grant. The quality status at issue. On the basis that the. Where there was a psychological exam involved. That the examiner. First of all was identified. That's one of the requirements under Egan. That they be identified. And their ability to do this be specified. That's not happened here. And there was no statement made. In anything provided by defendant. By a police. That this particular examiner. Recommended that he was. Any sort of a security threat. Why does it matter who recommended it? If we know that the CIA. Someone at the CIA. Who's qualified to do this. Determined that there were concerns. With his ability to meet this. ICPG which is all about trustworthiness. Your mental ability. Should we let you have the nation's secrets? They made a predictive judgment. Based on that someone. And decided to terminate. Processing his security requirements. And said try again in one year. You know if I understand your question. I'm sorry. Could you just restate the question? So I understand where. That's a you just asked a good question. I probably should just put a question mark. At the end of that. I'm confused about. Why you say. We have here. That someone at the CIA. Has determined that Mr. Mallory doesn't meet. They made the predictive judgment. That he's not going at this stage. He's he shouldn't be trusted with secrets. He should try again in a year. So they terminated his processing. How is that? How is that insufficient? How is that different? Where does the requirement come from? That you're talking about that? No, no, you only get Egan. If you identify the name of the person. Who made that determination? And you know, give us. I guess the particulars of what they said. Your Honor, and it's not even necessarily. Going to the particulars of what they said. But a broad category of what they said. And who said it to me? I'm asking where does that requirement come from? That comes from. That is one of the requirements in Egan. That was examined in great detail in foot. In the foot the. Well, that was the discussion. That was the argument in foot. They were saying, well, this person. You know, it's it's not a predictive judgment. Yada yada. In the foot case. What was the reason that the decision was upheld? Was affirmed by then Circuit Court Judge Kavanaugh in foot? Was that in that situation they identified? Who made the decision? What the qualifications of that individual were? Why that individual met the requirements of the language? That's not why Justice Kavanaugh upheld it. So he looked at the facts and he said. This is just like a security clearance. They're determining trustworthiness. They're determining your judgment, your ability to protect sensitive information. And we know that's what 704.2 is all about here. And that's what Mr. Mowry was found not to satisfy. Your Honor, what I'm saying is that in this case, we don't know who the individual was and what the qualifications were. We have broad language in a declaration that anybody that we would say please go evaluate this person would by definition be qualified, but we don't know what the qualifications were. As opposed to examining the specific individual's qualifications as was done in foot. I'm not sure where Egan requires that. I still don't see that. I don't want to belabor it because I see you're past your time, but you haven't really told me where Egan requires this specificity. I would be glad to address that with a specific language on rebuttal, but in the foot opinion, they do rely on that as being the second qualifier of Egan. Let me ask you this. If we determine this psychological examination, failure to pass, which the CIA liaison indicated, it's in the complaint, failure to pass, that's predictive judgment. How does that affect your case if that determination is made right there? If the determination had been made and had been communicated at all. If we determine that, that is sufficient to be a predictive judgment. The psychological examination along with the fact that he did not pass, which he states in his complaint and the CIA liaison says, if it's predictive judgment, then what happens? If there was predictive judgment exercised, then that would trigger the application of Egan. We don't believe that under the facts from Mr. Mallory that that did happen here. So let me ask you one question before you sit. That is, what does the failure to grant an additional security requirement entail? In other words, is that a physical worksite prohibition or what, I mean, what is it to not get that? Your Honor, what happened with Mr. Mallory is that, first of all, his staff-like access had been temporarily suspended pending the process, this processing, and when he did not, when it was not completed, then he did not have access. He was seated at a desk. Access to what, information, systems, program, or insight? Yes, as to parts of insight. Yes, as to systems. Yes, as to information and programs. Unless he doesn't have a security clearance. He did not have access to any of that because he could not work on what he had been working on before. But is it the same as not having a security clearance, is what I'm asking. In this situation, it had that impact on him because he was seated at a desk on a different floor in a different area, and he was given a brand-newly created position that had no duties, which involved periodically doing filing and other administrative acts. Let me ask another question. So by halting this additional security requirement process, did it, in effect, deny him a security clearance to do those things, to access systems, to go in and get information? Did it do that? That is the impact that it had on Mr. Bowner, yes. It had that effect. Why is it not EGIM? Because it's not the predictive judgment made. EGIM is there to protect the predictive judgment, not the impact. Is there a protected decision made by the agency that is deemed to have had- You said the psychological exam and the fact that he didn't pass it. In fact, the CIA liaison has indicated that there's predictive judgment that is not. The way that I read that is that you had somebody coming in after the fact saying, well, now that I look at the file the way that I see it is this. There's nobody, unlike all of the other cases, who said, I made this determination. I am making the predictive judgment. Or somebody saying, this individual made it, and we can back up who it is, and we can back up their qualifications to make it. Without getting into why they made it, we can back up their qualifications to make it. And we can identify that they did make the decision, as opposed to here, where all that we can identify is that Mr. Mowery was told, we're not going to finish. We're not going to move forward on the processing. And that impact on him as a practical matter ended up being the same as if his security clearance had been revoked. But it is not a decision that was ever made, as was communicated clearly in writing by appellees. That is not a decision that was ever made by appellees regarding Mr. Mowery. I don't do this often. I don't ask this question. But I want to get your thoughts on it. What do you think the Supreme Court would do on this case right here? I mean, given what the indication of, we don't want you going into national security, it's an executive branch. And I mean, it's not something we need to be worried about what they would do. But there are clear indicators here. And I just don't see very much supporting you in a case that goes to the Supreme Court. Do you? I do, Your Honor. And I see that because of the Supreme Court's opinion in Webster v. Doe, which came after Egan. And it came, I believe, six months after Egan. And in that case, which was not a Title VII case, but the Supreme Court referenced Title VII actions as examples where rummaging through some of the same facts did occur. But that was OK because there were safeguards put in place, which is what we were asking the district court be permitted to do, is utilize the existing safeguards that are in place, such as in-camera review and sealing documents and protective orders. And the Supreme Court in Webster v. Doe found that those protective measures that exist, the safeguarding measures that exist, were sufficient for the case before it, which was a due process one. But it referenced specifically, this happens in Title VII cases as well, that that was appropriate to allow to happen with those protective measures in place. And that is the reason that what happened here, I mean, if we look at what's happened since, what happened here is that you have, in the Fazaga oral argument before the Supreme Court, Justice Sotomayor stated, I don't know where in any of our jurisprudence we've ever suggested that in-camera review by a judge threatens national security. And I believe that's exactly telling us how they would look at this, that allowing those protective measures to take place would not be a threat. Justice Breyer also stated in that same oral argument that courts should be able to look at information and there should be a way for courts to decide how to address a question of national security concerns, not that it should be just a black box closed book because we said the magic words. With that, I'm going to sit down and reserve any remaining time that I have for rebuttal at this point. Thank you. We've been giving you plenty of time. I'm sorry? We appreciate it. Thank you. Let's see what the government has to say. Ms. Levinson? May it please the court, my name is Rebecca Levinson and I represent the National Geospatial Intelligence Agency and the CIA director in this case. In order to take a new position with the NGA in which he would be accessing CIA workspaces and CIA systems and information, plaintiff was required to satisfy the CIA's security requirements, which included a psychological examination. Now, plaintiff knows who this psychologist is because he met with that psychologist and that psychologist's predictive judgment as the United States Supreme Court has stated in the- Why the nuanced words here that we're not denying you security clearance when it looks to me like it's way to everything that looks just like you've done that. But they said, no, we're not doing that. We're not denying you security. We're just halting the process. Your Honor, there is a significant difference here that was touched on in some of the colloquy with my colleague. The ramifications here were different. This is what CIA determined is that plaintiff had not met the CIA specific psychological examination requirement that it had put in place and allowed him after a year during which he would be fully employed with the NGA to reapply for that position. He did not lose his security clearance. As his own complaint shows, he retained his security clearance. And therefore, if he wanted to apply for another job that required that clearance- The short answer is you're doing him a favor? Not that we're doing him a favor. And so as much as the ramifications here are different. Ramifications for him? Or what for? For him. For him. You're doing him a favor. Your Honor, I certainly think that the email limited the ramifications, the personal ramifications to him to a job with the CIA. And I would note that in any future security clearance application that plaintiff would have to submit to another government agency had his security clearance actually been revoked here, he would have to report that revocation, which is pretty significant in any future adjudication. Can I ask you one question, ma'am? Certainly. Colleagues, that is, Egan seems to- it draws what I think is an approach the court looked at, looking at separation of powers. And it determines this is something courts don't have any business in, the security business, very reasonable. I mean, you just don't- you can't have courts just dabbing into whether or not the CIA can give a clearance to obey. But it sort of dealt specifically with that. And it seems that courts have kind of broadened. Is it your view that we should look at Egan in a very narrow way? Because we do have instances, Title VII being argued here, that he's being discriminated on the basis of his religion. It could have been race, could have been sex, could have been whatever. Egan says, if it's security, national security, we don't belong in that conversation. I mean, that's a kind of odd thing. But national security is very powerful. It's very powerful. But when we begin to expand it, we are creating opportunities. I will- I hate the word abuse. But opportunity to do something other than what the Supreme Court wanted us to do, and that is the pure separation of powers. We begin to look at, well, he didn't deny security. He just- they just halted the process. And if the halting of the process was due to his religious beliefs, you know, how- is that something Egan intended to reach, that you can halt it for a discriminatory reason? Once you get into it, we're not going to ask why it is. I mean, you see where I'm going? I mean, that's the kind of concern here, is where are the lines drawn around Egan? And it seems to be if you go into the merits of it. And if that's it, then it seems like, you know, which we don't really get into, it seems like you really ought to start out, did this go to the merits of it? Maybe that's where the predictive business and all of that goes into it. But if you can. Yes, Your Honor. Certainly. And I would start with the word halt is plaintiff's framing. You received an email that said, we've made a decision to terminate your security processing. Based in the declaration that we submitted, our position is certainly that the CIA decided not to allow him to start the assignment because he did not pass the mental health examination. But even the word halt is very similar to the word suspend. And the suspension of a security clearance in analogous circumstances has certainly come under Egan analysis and has been roundly found to fall well within Egan. Title VII, on the other hand, this court has regularly determined that Title VII does not contain the express congressional belief that these national security decisions deciding where agencies decide what individuals should have what access to what information should come under Title VII's reach. So there's that limitation as well. But as to where to draw the lines, I think the court in foot actually had a pretty cogent analysis. There's two-part analysis. One, is this the kind of decision that Egan covers? And then Judge Kavanaugh looked to the language in Egan that talks more about agencies having the ability to control who sees their information. And there's a lot of language in Egan that goes beyond the strict term of security clearance and acknowledges that different requirements, different levels of clearance are going to be required for different positions, depending on the sensitivity. So then Judge Kavanaugh said, well, this psychological assessment is precisely the kind of decision that Egan asked us to protect. Because it governs whether or not this person is going to access the agency's information. And then the second prong was, is this person an expert in making this kind of predictive judgment? And looking to the fact that this was a agency-employed psychologist making a predictive judgment about reliability, trustworthiness, the exact factors that are at issue in ICPG 704.2, then Judge Kavanaugh stated that that factor was satisfied as well. And it's our position that that analysis should be no different in this case. Every case involves a, every Title VII or other employment discrimination case that involves Egan involves a plaintiff questioning the motives of the person making the determination. But this court has repeatedly held that looking to the merits of that determination or looking to the merits of any adverse action that follows from that determination is barred by Egan. How can we make this a simple case in which we can, what's the narrowest way we could write this, you know, to your view without saying, okay, if it's anything remotely connected with the security clearance, then that's part of the merits. It just seems to me part of the problem here has to do with how you characterize that psychological examination and the fact that he failed it. And he indicates that his complaint failed the whole bit. Do we declare as a matter of law that a psychological examination is in fact a predictive element? I think your honor that one could draw even a narrower line and say a psychological examination that is required, that is required by an agency in its judgment, in its discretion. And it's quite clear that the agency has discretion to set requirements for what an applicant or employee must meet to access this information. But to the extent that a psychological examination is a requirement for accessing its information and that that psychological examination is performed by an agency psychologist to assess adjudicated factors that would predict the applicant's reliability, trustworthiness, ability to protect classified information or national security information, that that predictive judgment falls within EGAN's scope. Do we have, but could it be examined in camera the basis of the psychological examination that leads to that conclusion that there's these other factors here? Whereas what we now have, we have simply the allegation, he's talking to me and then he gets to the fact that of my religion and he gets hung up on it. And the next thing I know, I'm out of there. Which all we have in a bear record is looks just like he was terminated because religion came up. And so the question then becomes, is there a room or an avenue by which a case like this, a judge could, and we do high security cases, we have special ways in which we protect the information, actually look at it and determine under some standard, is there a basis upon which the psychological exam wouldn't be a dog or type thing, but it would be, which would qualify the expert, but it would look at the substance and see if in fact, okay, it's there. There's something, I don't know, I'm sort of thinking about McDonnell Douglas and all these other cases that we got out there. There ought to be something there to say, you can't even establish a prime of face in case of what something more would be established that it was raised because you've got these other things in there. Your Honor, the Supreme Court is quite clear in EGAN that to the extent it's a predictive judgment, it's something that a non-expert outside body cannot assess. And this court repeatedly has understood. Do you really believe that? I mean, we assess everything else. I mean, this court assess predictive judgment is one of the lightweight things that we can assess in terms of looking at science and elements and how things can happen in there. Predictive is actually kind of dangerous because it really goes into the realm of subjectivity, which I think maybe that's where you're going with it on it, but there ought to be some basis to protect someone because if the facts are true from his perspective, you would never know. If you went in and he started evaluating and he started talking about religion and then this psychologist going to mind said, oh, this is all about religion. I'm not gonna do it. That ends it, but you wouldn't know because he may not have done anything else other than that. How is there no remedy for that is what I'm asking? Your Honor, EGAN has fully addressed this on the head. It states that there is a general presumption of reviewability, but that that presumption runs aground when it hits the concerns that the court was reviewing in EGAN. One particular issue is exactly that subjectivity factor that the Supreme Court recognized was the sole province of the executive to draw the lines of what's an acceptable margin of risk, what are the issues that we typically look to to assess the risk that that person could pose to classified information, and those are expert determinations that are the executive's province. I would note that the... That's coupled with this court's repeated finding that Title VII also stopped short at the door of these kind of security determinations  as recently as the decision in Campbell, as far back as the decision in Guyot, has repeatedly found that it seems that Congress has even specifically determined whether or not to bring these kind of determinations within Title VII's reach and then subsequent employment discrimination statutes and has come to the opposite conclusion. So for those multiple reasons, looking at the merits of the decision is something that EGAN pretty expressly forbids. And I would note that the prior cases that this court has analyzed in the employment discrimination context and where it hits up against EGAN... But, Bea, and on that, when you say looking at the merits of the decision, something it does, and I agree, EGAN does forbid that, but does it forbid when all the basic record indicates it doesn't give you anything except an allegation that it's religion? Does it preclude getting enough to determine it's not just religion or there could be something else? Or do you just assume that the psychiatrist did ask some other questions? I mean, because in theory, if he walks in there and he asks from day one, what's your religion? And then spend a whole hour to talk about nothing but religion, and that's all they have, we never will know it because we're going to assume he did what a psychiatrist would do, and that is asked all other to test and other stuff. So is there a way to address that extreme abuse? Your Honor, I don't think that there are sufficient allegations of extreme abuse in this case. Yeah, but it applies to a case like that. That's my question. And it may not be in this case, but if we just say the presence of a psychological examination where the allegations that made a religion as a discriminatory element, we can't even talk about. We don't have a clue what was that psychologically, other than they said we did what? Well, Your Honor, first of all, plaintiff himself alleges that the conversation started on a discussion of his alcohol use, which is a completely routine question asked in all kinds of security background investigations. Well known though, wasn't it? Wasn't it known before he even had the other security about his alcohol use? Or was that a first time sort of thing? I don't profess to know what plaintiffs use or not use. I'm not trying to be argumentative, but I'm trying to address the instance of what a role a court could play and why it is that in this instance you couldn't because you're talking about a statutory right, maybe it could be a constitutional claim or right here. And the question is, could a court in the privacy of chambers look at it and say, no, it's not just religion. And that seemed to me, that would be sufficient right there. No, Your Honor. And I would also know that in the record- You say that stops it all. You say Egan takes care of it all. We don't have any business in this. Yes, Your Honor. And that's what the Supreme Court says. It's a bright line rule according to the government. According to the Supreme Court, it says- That's what I'm saying. But no, you're the one we have before us today. You're saying it's a bright line rule. Yes, because- He can't do anything. Well, it's a matter of constitutional- All we can do is affirm Judge Ellis. That is our position, Your Honor. We can just say Judge Ellis is affirmed. That's the narrowest way to rule. Yes, Your Honor. You asked about that earlier. Yes. Is that correct? Yes, Your Honor. This is a matter of constitutional separation of powers. We can just say don't even bring these appeals up anymore, right? That's what you're saying. You're saying we can just write a little policy that says, well, if it's dealing even closely with national security, you've been discriminating against race, sex, don't bring it here because there's no remedy that the Supreme Court allows you. Is that what you're saying? No, Your Honor. I'm not saying that. But I am saying- You are saying that. I'm saying- You're saying exactly that. I'm saying that if it falls- Instead of saying affirmed, we could say dismissed. Your Honor- You could say dismissed. Your Honor, all I'm- Article 3, courts have no business looking at. And all I'm saying is that the Supreme Court in Egan- Is Egan. You're talking about Egan. Yes. And this court- All based on Egan. But this court has repeatedly- It's been the law since, what, 1988 or something. Yes, and this court has repeatedly repeated and followed that guidance. I would also note that for the record, in the record, there is a declaration that states that there were other Muslim officers who were working in that space and obtained that- That makes it look a little better. All I'm saying is, it's not an empty record. It's certainly- But that's not necessary. You don't need to know there were some others in there. You don't have to know anything other than the fact that you just didn't get it. But as to the- All you need to know is he makes the allegation was about religion. You don't have to know what was in the examination. You don't have to have a knowledge that this examiner even asked one question other than religion, and in his own mind says, I'm just not going to give it on religion, and we're going to hold it. And that's the end of it. And frankly, Your Honor- That is true, isn't it? Yes, and that's what happened in foot. That's what happened in foot. There was, contrary to the plaintiff's assertion, there was no reason given in foot. The appellate court's decision simply says that there were confidential reasons that he was denied, and he alleges- What case is that? The foot case. Foot v. Moniz. It's the D.C. Circuit's opinion. We had one here a few years back where some fellow was arrested, the plaintiff was arrested by the CIA over in Macedonia and held in Afghanistan in a solitary confinement or something for about a year, and then turned loose in Albania. And y'all filed an affidavit and said you can't review anything, and we said we have to go along with it. I think that's the Allbit case, Your Honor. What's the name of him? The Allbit case. I think I wrote it. We- It sounded terrible, what they had done. They got the wrong guy. I think there wasn't any question they had the wrong fellow. I just wanted to make a few additional- Oh, I see my time is up. For the reason- We've been very liberal on the time, so you- Thank you, Your Honor. I'll just make one or two additional responses to plaintiff. As stated, neither the Becerra Court nor the Foote case referenced any reasons that were given to the plaintiff for the denial or the predictive judgment, so I would note that. I would also note that the El-Gayany case in the Third Circuit only listed the regulatory reasons for which the plaintiff, the security clearance had been revoked. The declaration here certainly also lists the adjudicative factors that were at issue. Plaintiff did not seek injunctive relief to complete the process below, and he resigned from the NGA before he had the opportunity to reapply to retake the mental health examination, so it's difficult to understand how that kind of injunctive relief could be afforded. I would note that the Webster case related to statutory claims. It had no analysis of executive two powers, separation of powers, did not mention Egan in the majority opinion, and certainly did not analyze what happens when Egan's constitutional analysis comes up against constitutional claims. This court in Hagueb has said that constitutional claims to just address the merits of a security clearance are not actionable, and I would also note that the plaintiff made no formal motion to amend below. That motion is not properly before the court and should not be considered, and although Judge Ellis made note of the unavailability of the claims plaintiff seemed to be making at oral argument, he did not deny any such implied motion to the extent that it could be characterized as one as futile. For those reasons, Your Honor, unless there's any further questions, we respectfully request that you affirm the district court. Thank you. Thank you very much, Ms. Leverson. Ms. Jump? Thank you, Your Honors. I want to begin with just a few clarifications. First of all, there is absolutely no allegation in my client's defense here, and to make sure that we get the record clear, there's absolutely no allegation in the suit that he ever had any issue with alcohol abuse or any problem with alcohol. So I just want to make sure for his sake that we get that clear. It's simply that he was asked a question during the psychological examination as to when the last time was that he had a drink or whether he drinks, and he stated he hadn't had a drink for two years. No, that matters. Under the statement of the counsel on the other side, all you need, under Egan, is to show as a psychological examination of these facts right here, there's no appeal. There's nothing you can do about it. I agree that that is the argument made by my colleague on the other side of the aisle here, and I disagree with it. I was going in just to say perhaps there was something in the record that might show beyond the fact that his religion was there. It could be, but as she candidly admitted, it wasn't even necessary. So we can forget alcohol. Under their analysis, it's not necessary to say about alcohol like anything else. All you need to say is, psychologically expert, denied it, and a security process that's been halted or whatever, halted or terminated or not suspended, that's the end of it under Egan. Your Honor, I agree that that is the position of appellees in this case. I disagree that that's accurate, but I did want to just clarify, factually and on behalf of my client, that that does not happen to be an alcohol. I'm trying to understand why you're disagreeing with me. I'm stating that the alcohol, any allegation as to alcohol abuse is- It's not alcohol. I'm disagreeing with that ultimate statement here, which is a killer. That's a killer statement. You do realize that, don't you? Your Honor, I'd be glad to address that. First of all, the language in the email that Mr. Mowrey received was that, unfortunately, we can no longer continue your assignee processing. No longer continue is the exact language that was used that was communicated to him. Then it says, because of that, you can glue us into the language saying, this does not represent a security clearance denial for a national security position. You are welcome to go ahead and say you were not denied a security clearance regarding this application. But the language specifically that was used in regard to and presented to, at the time, to Mr. Mowrey was, we can no longer continue your assignee processing. And the determination, then it just says that determination was made during this process. There's nothing, and specifically states there is no appeal regarding this decision. That's one of the factors that we identify in Egan, even though there was no, if we look to the letter of the law of Egan, even though there was no due process constitutional claim raised in Egan, it was not an issue. The Supreme Court spent a good amount of its analysis and a good amount of its time walking through the fact that there were other avenues available to that plaintiff, to Mr. Egan, to have his claims addressed. And for example, in fact, even this court's decision in Haggab made a point of clarifying that in that instance, the plaintiff had an opportunity where he was given the reasons for the adverse action and was given an opportunity to respond to them in detail in the administrative context. That did not happen here. Mr. Mowrey was specifically told in the same email that there is no appeal regarding this decision, nor will any additional information be provided. And that has no basis in Egan, and that has no basis anywhere else in the law. I will also say that the language to answer your question, Your Honor, as to the exact language of Egan, which was relied upon by now Justice Kavanaugh in the Foote decision, was where Egan states, predictive judgment of this kind must be made by those with the necessary expertise in protecting classified information. And that is the language on which now Justice Kavanaugh relied and went through the analysis that he did in the Foote case. I will also clarify that in Foote, it is true that the circuit court's decision does not state the underlying facts and point to a specific fact made available. But if you go back to the district court decision in that case, it's in there. And in that case, the plaintiff alleged that he believed that the examiner, apparently qualified, later determined to be qualified, examiner who did the psychological exam had determined that he had previously been disciplined in his employment with the Air Force and that there were other reasons which are identified in the district court proceedings in that case. So it's not a mystery. It's not left open to be just guessed at as it is here. That was identified. I want to know this because I think it's important in terms of how I understand this case. I had alluded to the fact that maybe there could be this in-camera type review by a judge. But it does appear to me Egan does preclude that or does it in your view? I mean, it looks like the majority precludes that in-camera review by a judge to go back and look and see, is there something other than religion that was determinative of this decision? Yeah, I don't believe that it does preclude that review. Again, the language from Justice Sotomayor in the oral arguments in the Fazaga case, which the recent decision did not get into those merits, in that case, Justice Sotomayor said, I can't come up with anything where we've ever said that review by a judge in camera would be a risk to national security. So I don't think it's contrary. But that's not the argument here. It's not about whether us looking at the documents would risk the information in the documents. It's about whether we should be reviewing this security clearance decision at all. That's a different argument. And Your Honor, I believe Justice Gorsuch's comments during that same proceeding answered your question as to that and what you had raised earlier, Justice Wynn as well, when you stated that it is the court's role to preclude the government from using privilege as an offensive weapon. Is this about privilege? Have they asserted the privilege? They've asserted that because of that, Egan is meant to protect. Is that sorry? Have they asserted the privilege? They have not asserted the state secrets privilege, which was at issue specifically in Fazaga. What I'm saying is that where the where Justice Gorsuch says that it's the court's role to preclude protection, I would say then to paraphrase or to what I believe that to mean is that to preclude the government from using a protection, such as the protective cloak of the predictive judgment here, I believe also would apply to that. Are you asking us to interpret? I'm sorry. Are you asking us to interpret statements by a single justice in a Supreme Court oral argument to overrule or interpret longstanding Supreme Court precedent and precedent of this court? No, I don't believe that's necessary to do, Your Honor. I think this is an indicator. This is a recent indication that we have from the justices of where they stand. I do think that the other cases, again, Webster v. Doe had a due process claim in it and alluded to without absolutely recognizing Webster v. Doe was not a Title VII case. But in Webster v. Doe, the Supreme Court referenced Title VII actions as being those where protective measures and the safeguards, as we discussed earlier, are utilized to properly balance the competing concerns or potentially competing concerns. We are not in any way, shape, or form saying that there should not be national security deference given to the agencies who evaluate it. We are saying that the law does not mandate that it be simply a black box and you can't ask any further. The Supreme Court has not required that. This court has not required that. This court in Campbell applied Egan because it determined that the very same reasons that the plaintiff lost his clearance are the ones that led to the adverse action, which was before the court. And because it was those same reasons, this court decided that therefore it would be a violation of Egan. Egan applied and precluded evaluating what was behind those reasons, since the same reasons that led to the revocation of security clearance in that case of Campbell v. McCarthy are the same ones that would have had to have been examined in the adverse action that took place as to the plaintiff there that was before the court. So I believe that that's appropriately brought. That is consistent with existing authority. It's consistent with the prior holdings of this court as well as with the Supreme Court. And I will also just state briefly that in Becerra, again, there's a subsequent discovery of false information, which was referenced. And it's not always necessarily highlighted and pointed to and with the spotlight on it in the circuit court case, but it's in there. And it is as with the Foote v. Monius. It's in the district court pleadings where they talk about the specifics that were identified and the specifics that Ronnie Foote, the plaintiff in that matter, was complaining about are that he believed that it was inappropriate to go back and look at the reasons that he had been disciplined as an employee for the Air Force. So with that, again, I will say that I believe that all of the language put here together that is before the court does not ask this court to make any ruling contrary to what this court's already made and does not ask this court to make any ruling contrary to Supreme Court precedent simply requires that this court not further extend Egan to where instead of simply protecting a predictive judgment made by those with the knowledge and in the best qualified position to make that predictive judgment, don't extend it beyond the holding of Egan to say that appellees should be protected and shielded from giving any answer or any reason simply because they now say in litigation national security concerns were at issue and we need to all just trust them on that. And with that, I thank you, Your Honor. Thank you very much. Thank you very much, Ms. Jump. We appreciate counsel's presentations very much and thank you. And at this point in time, we would normally come down and recounsel in the well of the court. We're not going to do that because of the we're still under pandemic rules, but we want to thank you. And and I'm going to invoke personal privilege and take a five minute break. I may and then we'll take up the final case of the day. Madam Clerk, thank you. Court will take a brief recess.
judges: Robert B. King, James Andrew Wynn, Allison J. Rushing